Case number 24-5180. Agendia Inc. Appellants v. Robert F. Kennedy Jr., Secretary, United States Department of Health and Human Services. Mr. Hooper for the appellant, Mr. Shaw for the appellee. Mr. Hooper, can you hear us okay? Yes, I can, your honors, and I hope you can hear me. We can hear you great. See you when you're ready. Okay, thank you very much. May it please the I wish to thank the court and opposing counsel for allowing me to appear remotely. Agendia seeks Medicare coverage and payment for tests that performed between 2012 and 2015. The testing was performed for tests at the request of each patient's treating physician. The testing provided each doctor with specific information about each patient's unique breast cancer, and such testing gave the treating doctors more accurate information than would be available and could be obtained by viewing a specimen from each patient's tumor under a microscope. We're here in 2025, 10 years after the most recent claims, because Agendia was required to go through each step of the Medicare multi-step administrative appeal process for each different beneficiary. If Agendia had tried to bypass that process, as this court knows, a reviewing court would not have had jurisdiction. This is one reason we contend that each claim before the court now is separate, and each is a separate cause of action, even though you can bind some for efficiency purposes if you meet the time limits. But the different claims could not have been tried together. They could not have been tried as part of the Agendia 1 situation, and therefore they're not what we would call a convenient trial unit for purposes of both collateral estoppel or res judicata. And furthermore, the Secretary's Substantial Deference Regulation bolsters this characterization of these claims being separate and distinct. The regulation requires the government adjudicator to apply substantial deference to local coverage determinations for each claim. And then the adjudicators must apply the standard not only to each claim, but the laboratory in this case, as opposed to a beneficiary, was not even permitted to pursue a facial challenge to an LCD, because under the regular... Can I ask you a question about this process? It just seems to me that the LCD is a really important determination, because it gets all this deference later down the line. And I'm just if that process gives Agendia and other providers an opportunity to appeal or reconsider or participate in that determination, the LCD determination, because it's like once you're challenging it further down the line, it's a lot harder because... They do not have the right, Your Honor. Congress has two avenues available to challenge an LCD. One is only for beneficiaries, for some reason, and that is found in the statutes and in the Secretary's regulation. A provider can only challenge the application of an LCD or an LCD itself once it's applied, once the LCD is applied. What about the MALDEX? Do you participate in that whole MALDEX review on which the LCD is based? During the period we're at issue here, there was no process for a provider to participate. There was no what I would call a quasi-legislative process for enacting LCDs during the period at issue here, as the government can confirm. You have to provide all the data that they look at, but then there's no iterative process where you get to confer during that process? A provider does have to provide documentation. I believe there may be some kind of informal back and forth. You know, as the record shows here, for Agendia's MAMO print, it was approved by MALDEX, but for the two tests we're talking about here, MALDEX did not approve. I will represent to the court, Agendia has tried to get some kind approval, has not been able to be successful, which means the only way it can get paid and covered for its testing, testing ordered by the physicians, is to go through this process. And then this process is basically a process where the LCDs almost always win. I want to almost in every one of these cases here, there were six cases, if you count Agendia's first case in front of the Ninth Circuit, two administrative law judges have said that they are not going to apply the LCD, or actually with Judge Amendola in this case, he said, I am applying it, and I think the criteria even fit the LCD. But most of the time, these are close cases, they're complicated cases, and unlike any administrative appeal process I've ever seen, especially in Medicare, there is this presumption that an LCD, a policy, a very important policy made by a private contractor, seems to trump every other argument. I've never seen an administrative appeal process, perhaps the court has, where the government adjudicators must give substantial deference to the policy made by a private contractor. A policy that the Ninth Circuit says doesn't even have to be enacted as a regulation, because it's just the private contractor's view of how the statute should be interpreted. But by the time it gets through the administrative appeal process, it's entitled to all kinds of weight. Even if you're correct though, isn't your claim precluded because you could have raised it? Well, I think there is a much, well, let me go back. I do not believe, most respectfully, that these are considered to be the same claim, same nucleus of facts, and that's because we could never have combined them because of the time limits for appealing them, the requirement to appeal each claim separately. Mr. Cooper? Yes. I bet we're going to ask the same question. Maybe. So set aside that point. I appreciate that argument, every new claim giving rise, or triage of claims giving rise to a new cause of action. Just as a practical matter, if you set that argument aside, would you agree that you could have argued in the Ninth Circuit, for example, that the regulation is contrary to the statute, that all the relevant facts were present at that time? I agree. We could have done so, Your Honor. You're correct. The critical point, and I realize that creates a problem for claims preclusion, but for issue preclusion, which is not really now a question, we have to keep in mind the Ninth Circuit did not especially rule on that issue. But yes, we could have done so. I will be as candid as I can, having handled that case. We thought we could prevail on the other issues, and we were under Chevron at the time. The court hadn't given us the Loper decision. I appreciate that argument also, but on just the basic claim preclusion, I think the difficulty for you is getting around NRDC, the NRDC decision. So if you have a distinction of that, I would love to give you the chance to make that argument. Yes, I get that. I think we look at the, and I hope I'm pronouncing this correctly, the Apple tax decision, which allowed, and this may be dicta, but it's pretty clear dicta, that where in a small set of cases, a change in the controlling legal principles may allow a party to relitigate a claim that would otherwise be barred by res judicata. The government says, oh, that only applies to constitutional issues. It's not limited to constitutional issues. And if Loper doesn't qualify as one of those kinds of changes in the controlling legal principles, I can't think of another case that would. And it's directly on point here, because you're dealing with this whole concept of deference. And there's nothing anywhere in the statute. Has there been a case in this circuit where we actually did decline to apply claim preclusion because of an intervening precedent? I have not found one. I find the dicta, your honor. I've not found one. I'm hoping that this might be that case. But I do think we have two ways of getting at it, the separate claim concept and then the Loper concept. But let me move on quickly. Oh, my, I'm almost out of time. May I just complete my thought and then. Sure, that's no problem. Yeah, just on Judge Amador's decision, which is unique, even if. Even race to apply, Judge Amador's decision is not bound by that. And in Judge Amador's decision, A.J. Amador, he found in favor of the provider and the appeals counsel could only overturn that on a legal issue. It did not overturn it on a overturned legal issue saying you should apply this bar and you should apply substantial deference. But the district court then said, well, we'll look at substantial evidence. And then it went into a discussion of whether there was substantial evidence. That issue should not have been before the either the. Either the Medicare Appeals Council or the district court, because the district, because the Medicare Appeals Council only had the issue of whether there was some legal problem and it never ruled on the sufficiency of the evidence. Judge Amador preserved the one that you're making right now. Yes. Where did you argue that? Uh, when you say preserved, you mean in the district court or where? In the district court. Yes. But I just add I'm also wondering where in your opening brief. So I think you needed to do it in the district court, as Judge Pan says. And then you also needed to make that argument in your opening brief here. Yes, I believe I did. I'll make that representation. And I believe it was in a footnote, but I can find it. Unfortunately, I know my time is up. Maybe we'll give you a couple of minutes on rebuttal. And if you could try to identify the page number in the opening brief and as well as where we can find it in the district court record, I think that would help us help us as we try to figure out whether that argument was preserved or not. OK, thank you. Any more questions? Thank you very much. Thank you. May it please the court, Wai-Li Shaw for the Secretary of Health and Human Services. I just want to be clear about what's at issue in this case. I think what's before this court, what's left before this court now are a facial challenge to the substantial deference regulation and then as applied evidence, I'm sorry, as applied substantial evidence challenges to the two of the individual agency decisions below. So I'd like to begin with the facial challenge to the regulation. What we know from NRDC is that where a party makes repeated challenges to the facial validity of the same regulatory scheme, those claims rest on the same nucleus of operative facts. And therefore, the second and further attempts to litigate that facial validity are barred by claim preclusion. And I think NRDC applies perfectly to the facts of this case. I also want to turn to a few of the specific questions that were raised in my opposing counsel's argument. Could you just address the argument based on Yes. We've said sort of vaguely dramatic shift in law is not enough. Something else would be enough. What's your argument about why Loper-Bright doesn't fall? Yes, absolutely. So the general rule, and I'll get to the exceptions, but the general rule is that the operation of claim preclusion is not affected by changes in decisional law. So for example, the Supreme Court said in federated department stores, the effect of claim preclusion is not altered by the fact that the may have been wrong, arrested on a legal principle, subsequently overruled in another case. This court has said the same thing in the Hardison decision. Now, this court in Hardison also recognized the possibility of a very limited exception to that rule for cases involving paramount questions of constitutional law or exclusive jurisdiction. And as examples of the identified were the constitutionality of multi-member districts used in apportioning school boards and the constitutionality of state tuition grants to private schools. Now, this case does not involve a paramount question of constitutional law. It is an absolutely mind-run APA claim that an agency rule is arbitrary, capricious, or contrary to law. So it simply does not, there's no basis for invoking that exception. And so low probate itself, while it may have altered the way courts defer to agency interpretations of statutes, it does not alter the effect of claim preclusion in this case. One other issue. Thank you for that answer. So on the Amendola issue, the district court seemed to have held that Agendia forfeited an argument by failing to raise it in front of the council. Do you understand that holding to be that Agendia didn't adequately cite to the studies in its response to the referral notice? Could you just walk us through what you think the forfeiture argument is this? What happened is that a Medicare contractor filed a referral to the Medicare appeals council asking the appeals council to review ALJ Amendola's decision. And in this referral, you know, the contractor explained that the ALJ had erred as a matter of law by not either giving substantial deference to the LCD or explaining why not. And then furthermore, the contractor asked that the appeals council decide that the test that issue were not reimbursable. Then Agendia filed exceptions to that referral. And in those exceptions, Agendia focused almost exclusively on the sort of legal arguments that were at issue both in the Ninth Circuit and now in its facial challenge, which is that LCDs are invalid for various reasons. Agendia did not present a developed argument for why applying the correct legal standard, which is to apply substantial deference, that the Medicare appeals council should not should nonetheless decide not to defer and therefore rule in Agendia's favor. So it didn't make a developed argument there. And so the district court found that Agendia by failing to develop that argument had forfeited it. Now, Agendia notes for the first time in its reply brief, this argument, or it makes for the first time this argument that the Medicare appeals council was limited in its ability to consider the merits in order to actually decide the question of whether the tests were reimbursable or not. And I think that rests on a misreading of the regulations. So what the regulations say is that in the particular circumstance of this case, and I quote, in deciding whether to accept review, the council will limit its consideration of the ALJs or attorney adjudicators action to those exceptions raised by CMS. And here it was a claim of legal error. But it's important to note that that initial clause in deciding whether to accept once the Medicare appeals council actually accepts review 42 CFR 405.1100C states that when the council reviews an ALJs or attorney adjudicators decision, it undertakes a de novo review. And furthermore, the regulations specify that the Medicare appeals council can adopt, modify, reverse, or remand the case. So it was fully within the Medicare appeals council's authority to after finding the legal error to then apply the correct legal standard and determine what the outcome of the case should be, whether the test should be reimbursable or not. And by failing to make arguments on that issue, agenda forfeited that issue in before the agency and then also before the district court. If the court has no further questions, we ask that the decision of the district court be affirmed. Thank you very much. Thank you. May I have just a quick moment, Your Honor? What I would suggest is that the July 28, 2022 document that opposed the Medicare appeals council even taking the case, which is found in the joint appendix at page 345 is sufficient to cover any legal issue that was raised and could be appeals council take the case at page 346 of the agenda or of the documents, the appendix. Agenda specifically raises the issue that the department lacks the authority to have a regulation based on substantial deference. Now, as to questions of fact about the sufficiency of the record, that did not have to be raised because, again, the request for the appeals council to hear the case had to be based purely on legal issue, not on any kind of factual issue. So the fact that the district court seemingly has confirmed and decided not to set aside Judge Amidala's case because of a lack of evidence in the record exceeded the basis used by the Medicare appeals council to set aside the decision. The Medicare appeals council does not talk about the sufficiency of the evidence in the record. Nowhere in the Medicare appeals council do they talk about the sufficiency of the evidence. I just want to give you every opportunity to tell us if it would be a mistake to write, imagine we write the following sentence in an opinion and you read it and you think, no, that's wrong and it's wrong because we made this argument on page blank of our opening brief. Imagine the sentence in our opinion says agenda argues in its reply brief that it couldn't make evidentiary arguments to the appeals council because the appeals council review was limited to legal issues, but arguments made for the first time in a reply brief are forfeited. So if you read that line in our opinion, you think to yourself, oh no, that's not fair to us. We actually did make that argument in our opening brief. What page of your opening brief would you point to? I haven't been able to find that, your honor. My response would be, first I would be disappointed obviously, but my response would be that we did not have to show insufficiency of the evidence or I'm sorry, sufficiency of the evidence because it was an on the record hearing. The administrative law judge based his decision on the evidence in the record and the only thing we were required to object to was the legal issue, the substantial deference issue. So I hope that helps. I can't find the identical argument that pops up in the reply brief. I can't find it in the opening brief. That's fair. I appreciate that and I appreciate you looking for it and being responsive to our questions today. Do you
judges: Walker; Pan; Garcia